## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DONNA SHOTWELL, and d/b/a** | ) | |
| **USA DOCK, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-25-05-JFH-GLJ** |
| | ) | |
| **THE STATE OF OKLAHOMA, ex rel.,** | ) | |
| **DEPARTMENT OF TOURISM AND** | ) | |
| **RECREATION, SHELLEY ZUMWALT,** | ) | |
| **Individually and in her official capacity** | ) | |
| **As Executive Director the Oklahoma** | ) | |
| **Department of Tourism and** | ) | |
| **Recreation, UNITED STATES ARMY** | ) | |
| **CORPS OF ENGINEERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of Defendant Shelley Zumwalt, in her individual and official capacity as Executive Director of the Oklahoma Department of Tourism and Recreation, to dismiss the Amended Complaint against her pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On July 15, 2025, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. *See* Docket No. 31. For the reasons set forth below, the undersigned Magistrate Judge recommends that Defendant Shelley Zumwalt's Motion to Dismiss and Brief in Support [Docket No. 20] be GRANTED.

1

## PROCEDURAL HISTORY & BACKGROUND

Plaintiff originally brought this action against Defendants The State of Oklahoma, *ex rel*., Department of Tourism and Recreation ("ODTR") and Shelley Zumwalt, in both her individual and official capacity as Executive Director of ODTR. *See* Docket No. 2. Plaintiff subsequently amended the Complaint to add Defendant United States Army Corps of Engineers ("Corps of Engineers").[1] *See* Docket No. 14. In both the Complaint and the Amended Complaint, Plaintiff asserts claims for tortious interference with contract and violation of her due process rights pursuant to 42 U.S.C. § 1983. *See* Docket Nos. 2 & 14.

Plaintiff's claims arise out of a lease she and USA Docks entered into with ODTR for a premises in Arrowhead State Park on Lake Eufaula to operate a business providing a marina and related services ("Lease"). [2] *See* Docket No. 14, ¶¶ 7 & 9. ODTR leases the property on which the leased premises is located from the Corps of Engineers. *Id*., ¶ 8. Plaintiff alleged that after inspections by the Corps of Engineers and Oklahoma State Parks Director of Business Services[3] in October 2022, she was given notice of certain lease violations and, due to health and safety concerns, was given 30 days to cure the violations. *Id*., ¶¶ 13-14. Plaintiff further alleges that "both the Defendants" conducted follow-up

---

[1] The Corps of Engineers was recently served with summons but has not yet entered an appearance or otherwise filed any responsive pleading.

[2] It is unclear if Ms. Shotwell is the only Plaintiff because the Amended Complaint lists her individually and USA Dock, Inc. as a "doing business as" entity through which she was operating the marina, and the Lease refers to USA Docks and Donna Shotwell collectively as the Lessee. *See* Docket No. 14. When the Lease was renewed in 2010, it lists Arena 51 Marina @ Arrowhead, LLC as the successor to USA Docks, but is signed by Shotwell as the "owner." *See* Docket No. 20, Ex. 1. ODTR does not appear to dispute that Ms. Shotwell is a real party in interest with privity as a party to the Lease.

[3] Plaintiff does not identify if this is an agency within ODTC.

inspections in December 2022 and March 2023 during which more deficiencies were found and noted that previous deficiencies had not been corrected. *Id*., ¶ 14. Plaintiff does not attach any of the deficiency notices to her Amended Complaint. In a Notice of Termination letter dated April 14, 2023, ODTR notified Plaintiff that due to the ongoing issues surrounding the Lease, it was terminating the Lease pursuant to Section 9(a) as of May 11, 2023 ("Termination Letter"). *Id*., Ex. 2. Section 9(a) of the Lease provides that:

> [a]ny violation by Lessee of the terms of this Agreement shall be grounds for termination of this Agreement by State. Notice of the violation shall be provided to Lessee along with a time period within which Lessee shall remedy the violation. If the violation is not cured, the lease may be terminated by the State provided that thirty (30) days written notice of termination is given to the Lessee.

*Id*., Ex. 1. The Termination Letter further states that all personal property must be removed from the leased premises by May 11, 2023 and that "[a]ny personal property remaining as of May 12th, 2023 will be considered abandoned and will become the property of the Department." *Id*., Ex. 2. Plaintiff alleges that she spent several thousand dollars correcting the deficiencies noted in the October 2022, December 2022 and March 2023 inspections. *Id*., ¶ 19. The Amended Complaint is silent as to what, if anything, happened after May 11, 2023, including whether the Lease was terminated and/or any of Plaintiff's property was declared abandoned or seized by ODTR.

Although not mentioned in the Amended Complaint, prior to the proposed Lease Termination date, on May 8, 2023, Plaintiff filed a lawsuit in the District Court of Oklahoma County styled and numbered, *Donna Shotwell, individually and dba USA Dock, Inc. v. The State of Oklahoma, ex rel., Department of Tourism and Recreation*, CJ-2023-

2622 (Oklahoma Lawsuit).[4]  The Oklahoma Lawsuit arose out of the same underlying facts as this action regarding the Lease and Lease Termination, and Plaintiff sought a temporary restraining order against ODTR, declaratory judgement and anticipatory breach of contract. *Id*.  On the same day the Oklahoma Lawsuit was filed, May 8, 2023, Plaintiff obtained a temporary restraining order prohibiting ODTR from terminating the Lease or seizing any of Plaintiff's property subject to the Lease. *Id*.  Oklahoma subsequently moved to dismiss the action, arguing the petition failed to comply with the Oklahoma Declaratory Judgment Act because it did not join the Corps of Engineers as a party and that the Corps was a necessary party. *Id*.  On August 14, 2023, the court dismissed with action without prejudice without any statement of the grounds. *Id*.  Subsequently, the court denied Plaintiff's motion to reconsider and motion to amend her petition. *Id*.  Plaintiff then filed this action on January 6, 2025. *See* Docket No. 2.

## Analysis

### I.    Legal Standards

Federal Rule of Civil Procedure 8(a) requires Plaintiff to state her claims intelligibly to give fair notice of the claims to opposing parties and the Court. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007); *Monument Builders of Greater Kansas City, Inc., v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989).  Imprecise

---

[4] *See* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2023-2622.  The Court may take judicial notice of both its own docket sheets and other state or federal court docket sheets. *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

pleadings undermine the utility of the complaint and violate that purpose of Rule 8.  *See Knox v. First Security Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952).  Additionally, while often stated in the context of a § 1983 claim, individual defendants are not to be lumped together as a group, but should be treated as individuals, each with the Plaintiff's own claims against each individual defendant, based on each individual defendant's own behavior.  *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (because § 1983 is a "vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants."); *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations") (citing *Twombly*, 550 U.S. at 565 n.10,); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-533 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants – "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]" – and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a] claim").  *See also Goff v. Hukill*, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010) (noting the absence of any allegations regarding each defendants' conduct).

Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of

subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Where a motion to dismiss is based on a facial attack, as here, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint

sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## II.    Zumwalt's Motion

### A. Eleventh Amendment Immunity

Zumwalt first moves to dismiss the Amended Complaint's claims against her in her official capacity pursuant to Fed. R. Civ. P. 12(b)(1) because she is immune from suit under the Eleventh Amendment of the United States Constitution.  Zumwalt argues she must be dismissed in her official capacity because "Eleventh Amendment sovereign immunity bars suits for money damages against state, state agencies, and state officers in their official capacities." *Chilcoat v. San Juan County*, 41 F.4th 1196, 1213 (10th Cir. 2022).  Zumwalt argues Oklahoma has expressly not waived its Eleventh Amendment immunity or otherwise consented to a lawsuit such as the present case against her.

The Eleventh Amendment states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  This Amendment creates an immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether

7

a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "'The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.'" *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Authority*, 577 F.3d 1255, 1258 (10th Cir. 2009)).

In response to Zumwalt's Motion, Plaintiff asserts: 1) federal courts can enjoin state officials from violating federal law pursuant to *Ex parte Young*, 209 U.S. 123 (1908); Congress can and did abrogate state immunity to include bankruptcy cases; and Eleventh Amendment immunity is waived when a state removes a case to federal court. Whatever the merits of Plaintiff's various arguments in the abstract, none apply to the present action because she is seeking money damages not injunctive relief, a bankruptcy is not involved and Zumwalt did not remove this case because Plaintiff filed it in federal court. Thus, Zumwalt is immune from suit in her official capacity under the Eleventh Amendment.[5]

---

[5] Although a state can waive its Eleventh Amendment immunity by entering into private contracts, *see, e.g.*, *State Bd. of Public Affairs v. Principal Funding Corp.*, 1975 OK 144, ¶ 11, 542 P.2d 503, 506 ("[W]here a person or entity enters into a valid contract with the proper State officials and a valid appropriation has been made therefor, the State has consented to being sued and waived its governmental immunity to the extent of its contractual obligations and such contractual obligations may be enforced against the State in an ordinary action at law."), Plaintiff does not seek to enforce the Lease through a breach of contract action against Zumwalt.

## B. Tortious Interference with Contract

Zumwalt moves to dismiss the tortious interference with contract claim against her because Plaintiff fails to state a claim for such tort. First, Zumwalt argues she is immune from liability under the Governmental Tort Claims Act ("GTCA") in her official capacity because ODTR and its employees can be liable for torts under the GTCA only for torts of employees acting within the scope of their employment. Zumwalt argues that because tortious interference with contract necessarily requires a showing of bad faith, such bad faith actions cannot be committed within the scope of her ODTR employment. Zumwalt also argues that Plaintiff failed to allege any non-conclusory allegation regarding any specific bad faith action she took to interfere with the Lease.

Plaintiff responds that she states a claim for tortious interference with contact, noting that on or about April 20, 2023, her attorney responded to Zumwalt's ODTR Termination Letter by specifically detailing how the deficiencies previously identified had been corrected or disputing some of the deficiencies. *See* Docket No. 22, Ex. A. Plaintiff, acknowledging that Zumwalt cannot be held liable if she was acting within the scope of her ODTR employment, argues that scope of employment is a jury question.

Plaintiff's counsel's April 20, 2023 letter was attached to her Response but was not attached to or even referenced in the Amended Complaint. A court generally may not consider evidence extraneous to the complaint when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgment. *David v. City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). Notwithstanding this rule, "the district court may consider documents *referred* to in the complaint if the documents are central to

the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (emphasis added). At most, the Amended Complaint alleges Plaintiff "asserts she has corrected deficiencies noted in inspections of the premises" but does not mention she notified ODTR of such corrections through her attorney or otherwise reference the April 20, 2023 letter. *See* Docket No. 14, ¶ 19. As such, the undersigned Magistrate Judge declines to convert the motion into a motion for summary judgment and the April 14, 2023 letter will not be considered in deciding Zumwalt's Motion to Dismiss.

Whether or not the April 14, 2023 letter is considered, for the reasons set forth below, Plaintiff fails to adequately plead a tortious interference claim against Zumwalt. First, to the extent Zumwalt acted within the scope of her employment as Executive Director of ODTR, she is immune from liability under the GTCA.[6] *See, e.g., Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163 ("An employee of a political subdivision is relieved from private liability for tortious conduct committed within the scope of employment."). Plaintiff concedes this point in her Response.[7] *See* Docket No. 22, p. 5. Zumwalt cannot be liable in her official capacity because a "claim for tortious

---

[6] As noted above, Zumwalt is also immune from suit in her official capacity under the Eleventh Amendment.

[7] Moreover, such a tort cannot be asserted against Zumwalt in her official capacity because under Oklahoma law "[a] cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms*." Batton v. Mashburn*, 107 F.Supp.3d 1191, 1198 (W.D. Okla. 2015) (quoting *Ray v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 894 P.2d 1056, 1060 (Okla.1994)). "A defendant who was a party to the contract, in his representative capacity, cannot be held liable on such a claim." *Id.* (citing *Ray*, 894 P.2d at 1060)); *see also Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla. 1996) ("Hugoton cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract.").

interference with a business relationship because [it] requires a showing of bad faith and thus cannot be committed within the scope of employment by an employee of a political subdivision." *Id.* at 1166.

Second, Plaintiff does not allege any fact that Zumwalt plausibly acted outside her role as Executive Director or with the requisite malicious intent to support a tortious interference claim against Zumwalt in her individual capacity. A tortious interference with contract requires: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's*, 2009 OK 4 at ¶ 14, 121 P.3d at 1165. Plaintiff alleges that ODTR sent the Termination Letter, which Zumwalt signed as Executive Director. *See* Docket No. 14, ¶ 16 & Docket No. 22, Ex. 3.[8] Plaintiff does not allege any specific action Zumwalt took after sending the Termination Letter. Instead, assuming Zumwalt is one of the "both Defendants" referenced in the Amended Complaint, Plaintiff merely alleges that Zumwalt refused to acknowledge there were no deficiencies on the leased premises, claimed Plaintiff "was in breach of the lease agreement" and, by terminating the Lease, deprived Plaintiff of the right to operate her business under the Lease. *See* Docket No. 14, ¶ 23. In essence, Plaintiff simply alleges there is a dispute over whether the identified deficiencies were corrected and whether ODTR's termination of the Lease constituted a breach of the Lease. "'Scope of employment' is defined as performance by an employee acting in good faith within the duties of his office or

---

[8] Plaintiff attached an incomplete copy of the Termination Letter to the Amended Complaint, *see* Docket No. 14, Ex. 2, but a complete version was attached to Zumwalt's Motion.

employment or of tasks lawfully assigned by a competent authority. Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Tuffy's*, 2009 OK 4 at ¶ 8, 121 P.3d at 1163. Plaintiff only sets forth the conclusory allegation that "Defendants" acted maliciously and wrongfully. Such a conclusory and formulaic recitation of the elements of a cause of action is insufficient to state a claim that Zumwalt acted outside the scope of her ODTC employment or in bad faith. The vaguely alleged actions by Zumwalt all fall squarely within her duties as ODTR Executive Director. The only reasonable conclusion that can be drawn from the Amended Complaint is that Zumwalt, as ODTR Executive Director, communicated to Plaintiff that the Lease was being terminated because Plaintiff had not cured all the identified deficiencies. The fact that Plaintiff disagreed with Zumwalt's conclusion does not, without alleging more, suggest Zumwalt was acting maliciously or outside the scope of her employment. Thus, the Amended Complaint fails to state a tortious interference claim against Zumwalt in her official or individual capacity.

### C.  42 U.S.C. § 1983 Due Process

Zumwalt moves to dismiss Plaintiff's due process claim because she does not allege any personal involvement of Zumwalt in any constitutional violation. Specifically, Zumwalt argues Plaintiff fails to specifically allege she took part in any constitutional violation and whether any of Plaintiff's property was taken. In response, Plaintiff argues Zumwalt spearheaded the violation by signing the Termination Letter, took no action in

response to her attorney's letter arguing the deficiencies had been corrected, and was the final decision maker of the ODTR.

Although the Amended Petition alleges a claim for a violation of Plaintiff's due process rights, it does not specifically identify the type of right she claims was violated or the specific source of that right. The Due Process Clause of the Fourteenth Amendment is the source of different types of constitutional protection. First, it provides for procedural due process, a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state. *Daniels v. Williams*, 474 U.S. 327, 337 (1986). The Due Process Clause also contains a substantive component that incorporates the specific protections of most of the Bill of Rights against the states. *Id*. The Amended Complaint is silent on the type of due process violation, alleging only that ODTR's termination of the Lease and deeming her property to be abandoned constituted a reverse or inverse condemnation, which amounted to a taking of her property without just compensation. *See* Docket No. 14, ¶ 31. Plaintiff's Response refers to both procedural and substantive due process rights although she focuses on substantive due process rights. *See* Docket No. 22, pp. 7-8.

   *1. Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted). "The Fourteenth Amendment's procedural protection of property is

a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972).

A procedural due process property claim involves a two-step assessment: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quotations omitted). "[I]t is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

In the procedural due process context, "[p]roperty interests . . . are not created by the Constitution [but][r]ather . . . by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. "Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Kirkland v. St. Vrain Valley Sch. Dist. No. Re–1J*, 464 F.3d 1182, 1190 (10th Cir. 2006). "Valid contracts may constitute a property interest for purposes of due process." *Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998). A possessory interest in property that arises from a contract, such as a lease, has been held "sufficient to invoke the protection of the Due Process Clause." *Brecheen v. Lofaro*, 559 Fed. Appx. 723, 730 (10th Cir. 2014) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972).

While those with whom the government contracts might have some procedural due process rights, outside the employment context it appears that if such rights exist, they are

generally limited and are usually satisfied by state-law remedies. *See Masso-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 467 (1st Cir. 2017) ("A simple breach of contract does not amount to an unconstitutional deprivation of property. To hold otherwise would run the risk of transmogrifying virtually every dispute involving an alleged breach of contract by a state or a state agency into a constitutional case.") (cleaned up); *Ramsey v. Board of Education of Whitley County, Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) ("A state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties."); *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*, 825 F.2d 1404, 1409–10 (9th Cir. 1987) ("Yet the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts.").

Indeed, the Supreme Court held that when "[a] simple breach of contract is . . . alleged[,] . . . [t]he breach of a contract is neither a confiscation of property nor a taking of property without due process of law." *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462 (1911). More recently, in *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001), the Supreme Court reaffirmed this holding. In *Lujan*, the State of California withheld payment from a public works subcontractor, and the subcontractor sued the state under § 1983. *Id.* at 196–97. The Supreme Court characterized the subcontractor's interest as merely a contractual interest—"deprivation of payment that it contends it is owed under

a contract"—and held that this interest did not give rise to a § 1983 claim, as it could be adequately protected through a breach of contract suit.  *Id*. at 196.

The undersigned Magistrate Judge concludes that the Amended Complaint fails to satisfy the first prong of the procedural due process analysis by finding that it does not plausibly alleged that Plaintiff possessed a protected interest such that the due process protections are applicable or the deprivation of such a property interest.  On its face, the Amended Complaint at most alleges a disagreement over whether Plaintiff was in violation of the Lease sufficient to give ODTR grounds to terminate the Lease or to define ODTR's rights if Plaintiff breaches the Lease.  This appears to be in essence a breach of contract claim.[9]

Moreover, the Amended Complaint does not actually allege what specific actions Zumwalt took that deprived Plaintiff of any due process or what process was required to be afforded her.  Although there are three named Defendants, the Amended Complaint alleges only collectively that "*both Defendants* effectually took said property from plaintiffs by intentionally refusing to acknowledge that she was not in violation of the lease agreement[]" and "[t]hat said actions by *the Defendants* amount to a deprivation of the Plaintiff of her due process rights, a violation of her civil rights."  *See* Docket No. 14, ¶¶

---

[9] *Ramsey* acknowledges that a state breach of contract action may not provide an adequate remedy for a deprivation of some kinds of property.  844 F.2d at 1273.  Due process may then require some kind of a predeprivation procedure.  *Id*.  As a result, "not all parties can be made whole through a breach of contract action."  *Baird v. Bd. of Educ. for Warren Community Unit*, 389 F.3d 685, 691 (7th Cir. 2004).  The issue turns on whether Plaintiff "was denied a right by virtue of which [s]he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation."  *Id*. (quoting *Lujan*, 532 U.S. at 196).  The Amended Complaint does not allege facts sufficient to plausibly state such a claim.

28 & 32 (emphasis added).  Federal Rule of Civil Procedure 8(a) requires Plaintiff to state

her claims "intelligibly" to give fair notice of the claims to opposing parties and the Court.

*Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Lastly, it is not even clearly

alleged in the Amended Complaint that ODTR, much less Zumwalt personally, took any

of Plaintiff's property. "[I]ndividual liability under § 1983 must be based on personal

involvement in the alleged constitutional violation." *Foot v. Spiegel*, 118 F.3d 1416, 1423

(10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 6767, 679 (10th Cir. 1996).  As such,

the Amended Complaint fails to state a claim for a procedural due process violation § 1983.

   *2.  Substantive Due Process*

   "Substantive due process arises from the Fourteenth Amendment's protections

against governmental deprivations 'without due process of law.'" *Williams v. Berney*, 519

F.3d 1216, 1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1).  Where executive

action—as opposed to legislative action—is challenged, as it is here, a substantive due

process violation occurs where "government action deprives a person of life, liberty, or

property in a manner so arbitrary it shocks the judicial conscience." *Cnty. of Sacramento

v. Lewis*, 523 U.S. 833, 846 (1998); accord *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th

Cir. 2019); *Rollins v. Oklahoma ex rel. Norman Veterans Ctr.*, 2013 WL 3992393, at *5

(W.D. Okla. Aug. 2, 2013) ("The due process clause of the Fourteenth Amendment

prohibits executive abuse of power which shocks the conscience").  To state a claim for an

executive violation of substantive due process rights, Plaintiff must allege both a (1)

deprivation of property and (2) executive action that shocks the conscience.  *Lindsey v.

Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019); *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th

Cir. 2006). Executive action that shocks the conscience requires far more than negligence. *Moore*, 438 F.3d at 1040. "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id*.

The undersigned Magistrate Judge concludes that the Amended Complaint does not sufficiently allege a violation of Plaintiff's substantive due process rights. Again, the Amended Complaint fails to expressly allege that ODTR took Plaintiff's property. Moreover, there are no allegations of conduct by any one of the three Defendants, much less Zumwalt, that shocks the judicial conscience. Plaintiff essentially alleges a disagreement over whether she remedied the identified deficiencies. As noted above, even if Zumwalt acted recklessly or bent on injuring Plaintiff, such allegations are insufficient. *Id*. Therefore, the Amended Complaint does not plausibly state a substantive due process claim.

### D. Qualified Immunity

In addition to alleging failure to state a claim, Zumwalt contends she is entitled to qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Specifically, it is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). While *Twombly* "rejects a heightened pleading standard[,]" *Robbins v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008), "'[t]he *Twombly* standard may have greater bite in [the context of civil rights cases against a

government official where the defendant generally sought dismissal on qualified immunity grounds], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation.'" *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018) (quoting *Robbins*, 519 F.3d at 1249). "*Iqbal* reinforced our earlier statement that in a § 1983 action it is particularly important that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quotations omitted).

Thus, to make out a viable claim and to overcome the assertion of qualified immunity, Plaintiff must show that "(1) defendant violated [her] constitutional rights; and (2) the law was clearly established at the time of the alleged violation." *Soza v. Demsich*, 62 F4th 1248, 1253 (10th Cir. 2023); *see also Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (same); *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (same). "When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v. Woodward Cnty. Bd. Of Cnty. Commrs*, 2014 WL 7399367, *8 (W.D. Okla. Dec. 29, 2014) (citing *Brown*, 662 F.3d at 1162-1164 and *Iqbal*, 556 U.S. at 666, 673-675, 677-684). This means that, even at the dismissal stage, Plaintiff bears the burden of showing she has alleged a constitutional violation that was clearly established. *See Bledsoe*, 53 F.4th at 617 n.25 ("Appellants are correct that once they asserted qualified immunity in the district court,

which they did here, it was Bledsoe's burden to show both that he had alleged a constitutional violation and that that violation was clearly established.") (citing *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015)). When conducting its analysis, the court has discretion in deciding which component to address first. *Pearson*, 555 U.S. at 236. "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir.2008) (quotations omitted).

The undersigned Magistrate Judge concludes that Zumwalt is entitled to qualified immunity in her individual capacity. As noted above, the Amended Complaint fails to state a claim for a violation of either Plaintiff's procedural or substantive due process rights pursuant to 42 U.S.C. § 1983. Therefore, Plaintiff has not met her burden of showing that Zumwalt violated her constitutional rights and it is not necessary to address the clearly established prong. *See Hesse*, 541 F.3d at 1244 ("[i]f the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity." (quotations omitted)).

### E.  USA Dock, Inc. Standing

Zumwalt argues USA Dock, Inc. lacks standing to sue because it has been suspended by the Oklahoma Tax Commission. *See* Docket No. 20, Ex. 2 & Ex. 3. In response, Plaintiff argues that she, as the agent of USA Dock, has standing to sue and that USA Docket's suspension only restricts its ability to sue or be sued in state courts. *See* Docket No. 22, p. 6.

Although Zumwalt's Reply brief seems to suggest she seeks to dismiss Ms. Shotwell as well as USA Dock for lack of standing, the undersigned Magistrate Judge does not interpret Zumwalt's Motion so broadly. Zumwalt's Motion's argument as to lack of standing is only directed at USA Dock. *See* Docket No. 20, pp. 9-10.

Under Rule 17(b) of the Federal Rules of Civil Procedure, a corporation's capacity to sue or be sued shall be determined by the law under which it was organized. "Title 68, section 1212 of the Oklahoma Statutes sets forth the procedures for suspending a corporation for failure to comply with the tax code, i.e., failure to file and pay its corporate taxes." *In re Genentech, Inc.*, 2023 WL 11921038, at *1 (N.D. Okla. Oct. 11, 2023) (quoting *Moncrieff-Yeates v. Kane*, 323 P.3d 215, 218 (Okla. 2013)). "Where 'one is barred from recovery in the state court, he should likewise be barred in the federal court.'" *Flour Mills of America, Inc. v. Pace*, 75 F.R.D. 676, 678 (E.D. Okla. 1977) (quoting *Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949)).

Plaintiff alleges that USA Dock is an Oklahoma corporation. *See* Docket No. 14, ¶ 1. Zumwalt sets out that USA Dock, as the successor to Zatar Corporation, is suspended by the Oklahoma Tax Commission. *See* Docket No. 20, Ex. 2 & Ex. 3.[10] Plaintiff does not challenge this fact. In this matter, Plaintiff named USA Dock only as a doing business

---

[10]"[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quotations omitted). A fact subject to judicial notice is one that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

as entity of herself.  Therefore, there is no manifest injustice in granting Zumwalt's motion against USA Dock for lack of standing as Plaintiff can pursue this case individually. Therefore, USA Dock is dismissed for lack of standing due to its suspension by the Oklahoma Tax Commission.

## III.    Leave to Amend

Finally, although Zumwalt fails to comply with LCvR 7.1(o), the undersigned Magistrate Judge finds that Plaintiff should be given leave to further amend her Amended Complaint with respect to only her claim for violation of her due process rights under 42 U.S.C. § 1983.  Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Whether to grant leave to amend is within the trial court's discretion.  *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (internal quotations omitted).

Although Plaintiff amended her complaint once, she only added an additional defendant and did not address any issue raised in Zumwalt's Motion to Dismiss and it is not apparent such amendment would be futile.  Therefore, Plaintiff is granted leave to

amend her Amended Complaint as it relates to her due process claim consistent with this report and recommendation.  Moreover, Plaintiff is cautioned that in any subsequent amendment she must be mindful of her pleading obligations under Fed. R. Civ. P. 8(a) and the other issues addressed in this report and recommendation.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant Shelley Zumwalt's Motion to Dismiss and Brief in Support [Docket No. 20] be GRANTED WITHOUT PREJUDICE.  It is further RECOMMENDED that Plaintiff be granted leave to amend her Amended Complaint with respect to her due process claim and such amendment shall be filed not later than 14 days after the adoption of this Report and Recommendation and attach a redline copy showing all changed from the Amended Complaint.  Any objection to this Report and Recommendation must be filed within 14 days.  *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of Court upon a showing of good cause.

**DATED** this 15th day of July, 2025.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**